UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

DENISE HALL,

                        **Plaintiff,**

       -against-

ARCHCARE, et al.,

                        **Defendants.**

-----------------------------------------------------------------X

**18-CV-00515 (PAC)(SN)**

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/2021

**SARAH NETBURN, United States Magistrate Judge.**

On June 4, 2020, the Hon. Paul A. Crotty referred this matter to me to resolve a request by Plaintiff's counsel, Michael Diederich, to restore this case to the docket for the purpose of assessing a charging lien pursuant to New York Judiciary Law § 475 against Plaintiff Denise Hall's settlement proceeds. See ECF No. 42. As discussed below, the motion to fix and enforce a charging lien is GRANTED in the amount of $15,000.

## BACKGROUND

On January 19, 2018, Plaintiff Denise Hall initiated this action, asserting that she had been wrongfully terminated from her position as a registered nurse by Defendants due to racial and age discrimination in violation of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, New York Labor Law, and New York City Human Rights Law, among others. See ECF No. 1. At that time, and throughout the litigation of this case, Plaintiff was represented by Michael David Diederich, Jr., of the Law Office of Michael David Diederich Jr. ("Diederich"). Plaintiff and Diederich had entered into a retainer agreement on March 11, 2016, pursuant to which Diederich agreed to represent Plaintiff in her claims against Defendant. See

ECF No. 33, Ex. 1 at 2 (Retainer Agreement). According to the Retainer Agreement, Diederich was to be paid the greater of "(a) Thirty[-]three and one-third percent (33-1/3%) of any sums recovered whether recovered by suit, settlement or otherwise; or (b) the attorney's actual accrued fees, which fee shall be based upon an hourly rate of $400. (This $400/hour provision will only in unusual circumstances exceed 50% of the total recovery.)" Id. The Retainer Agreement further required, in the case of litigation, the Plaintiff "to pay the attorney $75 per hour toward attorney's accrued attorney's fee, payable when billed, which partial fee shall, when paid, be deemed a credit toward the attorney's fee referenced above." Id. Finally, the Retainer Agreement required the client to prepay for case-related expenses. Id.

On June 13, 2019, Diederich requested, via letter, a court conference in order to discuss his possible withdrawal from this case because his and his client's expectations for the resolution of the case were quite different and because Plaintiff's "understanding of her written retainer agreement" differed from her attorney's. ECF No. 23. Diederich's request was granted, ECF No. 24, and on June 27, 2019, Plaintiff and her attorney attended a status conference before Judge Crotty. Defense counsel also attended. At the conference, Judge Crotty heard from both Diederich and Ms. Hall, and instructed Diederich to make "one more good faith effort with [his] client and with [defense counsel] to see if" the matter could be resolved. June 27, 2019 Conference Tr. at 5:13–15. The next day, Judge Crotty referred this matter to my docket for settlement. ECF No. 25.[1]

By October 2019, the parties had agreed to the terms of a settlement and were exchanging drafts of proposed settlement agreements. See ECF No. 33, Ex. 1 at 52 (October 11, 2019 email). After Diederich sent a draft of the Settlement Agreement to his client, she reportedly asserted

---

[1] A settlement conference was eventually scheduled for December 2, 2019, but it was adjourned in light of Diederich's motion to withdraw. ECF No. 31.

that her accountant was reviewing the proposed settlement papers. See id. at 54 (November 12, 2019 email). Despite several emails from Diederich, Plaintiff apparently did not respond to any emails, let alone provide information as to the changes she wished to make to the settlement agreement or a revised copy of the settlement agreement for several weeks. See id, at 58–59 (November 21, 2019 emails), 61 (November 23, 2019 email), 63 (December 2, 2019 emails).

On November 25, 2019, Diederich moved to withdraw as Plaintiff's attorney. See ECF No. 29. At the time, Diederich reported that the parties had come to an agreement on the terms of a settlement; after defense counsel prepared the proposed settlement papers, Plaintiff took time to review the papers and alleged there was a point of concern. Id. at 1. As of November 25, 2019, Diederich had not heard from his client for six days, as Plaintiff was apparently not answering any of his calls, texts, or emails, and had not provided Diederich with the change she wished to make to the settlement. Id. Diederich also asserted that his client had been uncooperative for "many months," did not trust him, and had refused to pay him the partial fee he was owed pursuant to the retainer agreement they had entered into. Id. at 2; see ECF No. 33, Ex. 1 at 2. Judge Crotty did not rule on Diederich's motion to withdraw.

On December 10, 2019, Plaintiff informed Defense counsel via email that she would send a signed copy of the settlement agreement by December 20, 2019; she ultimately did not send her signed agreement until January 2, 2020, which she sent directly to Defense counsel, and not to Diederich. ECF No. 33, Ex. 1 at 69 (December 10, 2019 emails), 72–73 (January 2, 2020 emails).

Diederich alleges that the document Plaintiff sent back to defense counsel was not the agreed-upon settlement document that he had previously reviewed. ECF No. 33 at ¶¶ 4(m)–(p). In essence, Diederich asserts that the settlement agreement the parties had agreed to (and which

he had reviewed) provided that Defendants were to pay Plaintiff an undisclosed sum and a "one-time lump sum payment . . . made to Ms. Hall's attorney, Michael D. Diederich, Jr., in the amount of [redacted] for attorney's fees, for which an IRS form 1099 will be issued to Ms. Hall and Michael D. Diederich, Jr." Id. at 15 ("original" settlement agreement). The settlement agreement that Plaintiff signed and returned to defense counsel, however, referred to "a one-time lump sum payment . . . made to Ms. Hall's attorney, Michael D. Diederich, Jr., in the amount of [redacted] *(33.3%) for full* attorney's fees, for which an IRS form 1099 will be issued to Ms. Hall and Michael D. Diederich, Jr." Id. at 26 ("altered" settlement agreement) (emphasis added). This latter page is initialed "DH" and the full agreement is signed by Plaintiff. Diederich asserts that the "total settlement amount remained the same" in the second version of the settlement agreement, but that Plaintiff had retyped the page including this provision to reduce the amount of attorney's fees Diederich would receive pursuant to the settlement. ECF No. 33 at ¶ 4(p).

Plaintiff tells a different narrative. She asserts that Diederich demanded an "excess of 50% in legal fees of [the] Settlement agreement." ECF No. 40 at ¶ 5. She asserts that his allegations that she tried to defraud him by changing the settlement agreement amount to defamation, and that Diederich was not entitled to more than a third of the proceeds of the settlement. Id. at ¶ 6. Plaintiff also notes that in July 2019, Diederich initiated efforts and enlisted the assistance of other counsel to recoup his unpaid legal fees. See id. at 3, 93 (December 7, 2019 email), 98 (July 17, 2019 email).

On January 11, 2020, Diederich filed a Motion to Enforce Attorney's Charging Lien, requesting that the Court honor and enforce a charging lien in the sum of $20,000. ECF No. 32 (Notice of Motion).[2]

---

[2] In support of his motion to enforce a charging lien, Diederich filed a declaration with accompanying exhibits, ECF No. 33, as well as two memorandums of law, see ECF Nos. 34 and 35. Upon the Court's

On January 14, 2020, Judge Crotty dismissed the matter and closed the case after learning that the parties had reached a settlement in principle. ECF No. 36. This order terminated all pending motions in the case, which included Diederich's November 25, 2019 motion to withdraw as counsel and January 11, 2020 motion to enforce a charging lien. See id. The order also noted that the dismissal was "subject to reopening should the settlement not be consummated" by February 13, 2020. Id. That same day, Diederich filed a letter requesting that the Court amend its order of dismissal to exclude his motion to enforce a charging lien. ECF No. 37.

On February 8, 2020, Diederich filed another letter which informed the Court that the settlement had not been consummated and sought to reopen the matter. ECF No. 38. Diederich explained that Defendant was withholding disbursement of the settlement funds while Diederich's application to enforce a charging lien remained pending. Id.

Then, on February 26, 2020, Diederich filed another declaration, styled as a "Reply Declaration," further supporting his application for a charging lien. ECF No. 39. In this declaration, Diederich noted that on February 20, 2020, Plaintiff had emailed the Court and Diederich her *pro se* opposition to the charging lien, which did not include a certificate of service. Id. at ¶ 3. Those opposition papers were subsequently filed on the docket on April 14, 2020. See ECF No. 40. Plaintiff's filing, which the Court construes as her opposition papers, contests Diederich's explanation regarding the settlement papers and attempts to assert a counterclaim in the amount of $75,000 stemming from claims of "slander, irreparable damages to her lawsuit/ defamation of character/ breach of attorney client confidentially [sic], insufficient counsel (legal malpractice)." Id. at 7. Plaintiff requests that the Court issue a "gag order"

---

review, the memoranda filed at ECF Nos. 34 and 35 are identical. Accordingly, the Court will only refer to the memorandum at ECF No. 34.

directing Diederich to cease and "desist from making false claims" about her, deny Diederich's application for a charging lien, order Diederich "to refrain from all communication, harassing emails, verbal, whether via telephone call or face to face, and through third parties unless directed by a Court order," order Diederich to "stay away from" her, and order Diederich to "turn over all documents associated with Ms. Hall related to this matter within 30 days from this hearing." Id. at 7–8.

The same day Plaintiff's opposition papers were filed with the Court, Diederich filed, without prior leave of Court, a "Supplemental Reply Declaration," in which he reiterated the arguments made in his prior declarations. ECF No. 41.

On June 4, 2020, Judge Crotty referred Diederich's motion to reopen the case and enforce a charging lien to my docket for resolution. See ECF No. 42. On October 6, 2020, I ordered both Diederich and Plaintiff to appear for a conference to discuss Diederich's outstanding application. ECF No. 43. On October 16, 2020, Diederich and counsel for Defendants appeared; Ms. Hall did not, although Diederich affirmed that she had been given notice of the conference.

## DISCUSSION

I.   **Legal Standards**

   A.  **Procedural Wrinkles**

Diederich objects to Plaintiff's submission of her opposition to his application for a charging lien, asserting that Plaintiff sent her opposition papers to the Court and opposing counsel (Diederich) via email and without a certificate of service. ECF No. 39 at ¶¶ 3–5; see Fed. R. Civ. P. 5(d) (requiring the filing of a certificate of service when service is not completed on the court's electronic filing system). Diederich's objection is noted. The Court, however, liberally construes Plaintiff's opposition papers as timely and properly filed. In general, "[a]

document filed *pro se* is 'to be liberally construed.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation omitted) ; see also McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156–57 (2d Cir. 2017) ("The policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."(quoting Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007))); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)).[3]

### B. Charging Liens

"New York Judiciary Law § 475 . . . governs attorneys' charging liens in federal courts sitting in New York." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998)). That statute provides:

> From the commencement of an action . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475. Accordingly, a charging lien is considered "a security interest in the favorable result of litigation, giving the attorney equitable ownership interest in the client's cause

---

[3] The Court also takes note of the fact that Diederich filed his "Reply Declaration"—which the Court construes as his reply—on February 26, 2020, after receiving Plaintiff's opposition papers via email. ECF No. 39. Nevertheless, Diederich filed, without leave, a *supplemental* reply declaration on April 14, 2021. ECF No. 41.

of action . . . ." Antonmarchi v. Consol. Edison Co. of N.Y., 678 F. Supp. 2d 235, 240 (S.D.N.Y. 2010) (quoting Chadbourne & Parke, LLP v. AB Recur Finans, 794 N.Y.S.2d 349 (1st Dep't 2005)).

"The lien comes into existence, without notice or filing, upon commencement of the action or proceeding." DeCastro v. Kavadia, No. 12-cv-00386 (JMF), 2018 WL 4771528, at *3 (S.D.N.Y. Oct. 3, 2018) (quoting LMWT Realty Corp. v. Davis Agency Inc., 85 N.Y.2d 462, 467 (1995)). It requires that, "as a result of the attorney's efforts, (1) the client must assert a claim, (2) which can result in proceeds (3) payable to or for the benefit of the client." Id. (quoting In re Schick, 215 B.R. 13, 15 (Bankr. S.D.N.Y. 1997)).

A charging lien "is for the benefit of an 'attorney of record' only." Itar-Tass, 140 F.3d at 450 (collecting cases). Accordingly, an attorney who withdraws his representation is only entitled to enforce a charging lien "so long as the attorney does not withdraw without 'good cause.'" Joffe v. King & Spalding LLP, 337 F. Supp. 3d 366, 369 (S.D.N.Y. 2018) (citing Stair v. Calhoun, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010)); see also Melnick v. Press, No. 06-cv-06686 (JFB)(ARL), 2009 WL 2824586, at *2 (E.D.N.Y. Aug. 28, 2009) (collecting cases). The non-payment of legal fees is established and accepted "good cause" for an attorney's withdrawal, as is the breakdown of trust and communication between an attorney and his or her client. See, e.g., Genao v. City of New York, No. 14-cv-08122 (AT)(JLC), 2017 WL 57886, at *2 (S.D.N.Y. Jan. 4, 2017) (discussing withdrawal based on a client's failure to pay); Barros v. Nat'l R.R. Passenger Corp., No. 18-cv-03394 (VSB)(SLC), 2020 WL 6581184, at *4 (S.D.N.Y. Nov. 10, 2020) (discussing withdrawal due to irreconcilable differences). Ultimately, whether a charging lien is fixed in such a circumstance "lies within the discretion of the Court." Joffe, 337 F. Supp. 3d at 369 (citing Allstate Ins. Co. v. Nandi, 258 F. Supp. 2d 309, 311 (S.D.N.Y. 2003)).

## II. Application

### A. Diederich's Entitlement to a Charging Lien

As a preliminary issue, the Court considers the status of the relationship between Diederich and Ms. Hall. Although Diederich moved to withdraw his representation of Plaintiff in this matter, there is no indication in the record that the motion was ever granted. Indeed, for the most part, neither Plaintiff nor Diederich contend that Diederich has been discharged—in fact, Diederich repeatedly asserts that he has not been discharged, and Plaintiff never appears to contradict him. See ECF No. 33 at ¶ 1 (Diederich asserts he is "Plaintiff Denise Hall's counsel of record in this action"); ECF No. 34 at 12 (Diederich's Memorandum of Law in which he asserts that he was "no[t] dismissed by Hall"); see generally ECF No. 40. Weighing against this conclusion is only the fact that Diederich signed his application for enforcement of the charging lien as the "*Former Attorney of Plaintiff* & Lienholder." ECF No. 34 at 14 (emphasis added).

There is no question that there has been a complete breakdown in the attorney-client relationship. Both parties lay serious accusations at the other's feet. By Diederich's account, Plaintiff did not cooperate in the litigation of her case, ECF No. 33 at ¶ 4(b), failed to pay for litigation expenses and the partial fee, as provided for in the Retainer Agreement, id. at ¶¶ 4(b)–(c), refused to consider her attorney's legal advice, id. at ¶ 4(d), and attempted to defraud him, defense counsel, and the Court, id. at ¶ 4(p). The emails from Diederich to Plaintiff confirm the mostly one-sided nature of the communications. See, e.g., ECF No. 33, Ex. 1 at 61, 62, 66, 73; ECF No. 40, at 35. Plaintiff, for her part, levies a host of accusations against Diederich, asserting, among other things, that Diederich "willfully" hurt her case and acted with negligence, and billed her "for hours he did not work." ECF No. 40 at ¶ 4. The email correspondence between Diederich and Plaintiff submitted by both individuals also confirm the lack of trust

between the parties and the unfriendly nature of the communication on both sides. See, e.g., ECF No. 40 at 48–49 (letter from Diederich to Plaintiff), 72 (Dec. 7, 2019 email).

Despite the clear breakdown in the relationship, the Court does not see any evidence of threats made to Plaintiff by Diederich, falsification or inflated fees, breach of attorney-client confidentiality,[4] or any of the other harms Plaintiff asserts. Accordingly, the Court cannot give them the weight Plaintiff demands. See Ruiz v. Keratin Bar Inc., No. 17-cv-02216 (VEC), 2020 WL 7079904, at *4–5 (S.D.N.Y. Dec. 3, 2020) (declining to accord any weight to Plaintiff's "implausible claims" against her former attorney in a charging lien dispute).

Accordingly, this Court concludes that, on this record, Diederich was not dismissed, and therefore it need not wrestle with the question of whether dismissal was with or without cause. See Antonmarchi, 678 F. Supp. 2d at 241 ("[I]t is well-settled that an attorney loses his right to enforce a charging lien if the attorney withdraws or is discharged for cause." (quoting Petition of Harley & Browne, 957 F. Supp. 44, 48 (S.D.N.Y. 1997)).

Because an attorney may have a "lien for his litigation efforts that bring a fund into existence," when there is a settlement, "the attorney's lien attaches to the fund representing the cause of action extinguished by the settlement." In re Shirley Duke Assocs., 611 F.2d 15, 18 (2d Cir. 1979) (citations omitted); see also City of Troy v. Capital Dist. Sports, Inc., 759 N.Y.S.2d 795, 797 (App. Div. 2003) ("While this statutory charging lien comes into existence upon commencement of an action or proceeding, the lien attaches only when proceeds in an

---

[4] Pursuant to New York's Rule of Professional Conduct 1.6(b)(5)(ii), an attorney may "reveal or use confidential information to the extent that the lawyer reasonably believes necessary . . . to establish or collect a fee." See also In re County of Erie, 546 F.3d 222, 228 (2d Cir. 2008) (explaining that there is a "waiver by implication" of the privilege "when a client places the attorney-client relationship directly at issue" (citation omitted)).

identifiable fund are created by the attorney's efforts in that action or proceeding." (citation omitted)).

Here, the parties reached a confidential settlement agreement in late 2019, in which Defendants were to pay a confidential sum to Plaintiff inclusive of Diederich's fee. See ECF No. 33 at ¶ 4(f); ECF No. 33, Ex. 1 at 14–23 ("original" settlement agreement). This is undoubtedly a favorable outcome for Plaintiff, and accordingly, a charging lien attached to the settlement amount.

### B. Amount of Charging Lien

A court determines the amount of a charging lien under § 475 by considering the "reasonable value of the services provided." Skylon Corp. v. Greenberg, 164 F.3d 619 (2d Cir. 1998) (summary order) (quoting Gumowitz ex rel. W. Seventy-Ninth St. Assocs. v. Resolution Tr. Corp., No. 90-cv-08083 (DAB), 1995 WL 375882, at *1 (S.D.N.Y. June 23, 1995)); accord Winkfield v. Kirschenbaum & Phillips, P.C., No. 12-cv-07424 (JMF), 2013 WL 371673, at *2 (S.D.N.Y. Jan. 29, 2013). What is "reasonable" is not limited by "the amount provided in the contract or retainer agreement." Lai Ling Cheng v. Modansky Leasing Co., 73 N.Y.2d 454, 457–58 (1989) (citing Matter of Montgomery, 272 N.Y. 323, 326–327 (1936)). In determining what constitutes a "reasonable value of the services provided," a court looks to "the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known)." Sequa Corp. v. GBJ Corp., 156 F.3d 136, 148 (2d Cir. 1998).

As of January 2, 2020, Diederich's unpaid fees and costs amounted to $24,131. ECF No. 33, Ex. 1 at 6–9 (Billing Records). Nevertheless, Diederich first waived "all amounts" owed to

him by Plaintiff over $20,000, ECF No. 33 at ¶ 4(h) n.10, and then stated a "willingness to limit his charging lien to $17,000," id. at ¶ 4(v). Even later, in his supplemental reply declaration, Diederich offered to waive a greater portion of his charging lien in order to allow Plaintiff to receive $5,000 of the settlement proceeds, "but on condition that she seeks no further relief in this matter, or appeal, or other claim against me." ECF No. 41 at ¶ 10. Pursuant to the Retainer Agreement signed by Plaintiff, Diederich is entitled to "*the greater of* . . . [t]hirty-three and one third percent . . . of any sums recovered" or "[t]he attorney's actual accrued fees," which are calculated at Diederich's hourly rate of $400.[5] ECF No. 33, Ex. 1 at 2 (emphasis added).

Evaluating the value of Diederich's services, the Court considers the fact that Plaintiff's case was litigated for a year—with an additional year spent litigating Diederich's fees. Counsel, despite Plaintiff's assertions otherwise, invested a substantial amount of time in this matter. Id. at 6–9. Diederich reports spending 80 hours on this case, between time spent drafting and filing the complaint, participating in mediation, conducting discovery, preparing for and attending depositions and court appearances, and engaging in settlement discussions with opposing counsel. Id. These actions were necessary in order to secure a positive outcome in Plaintiff's case.

The Court does note, however, the existence of gaps in Diederich's entries. For example, there are no time entries between December 28, 2018, and November 6, 2019. Id. at 8. Diederich also includes a notation that there are approximately 21 hours, spent emailing with Plaintiff and opposing counsel, that are not documented and for which he does not seek compensation for

---

[5] Again, the Court notes that the Retainer Agreement does not limit the amount of the lien, but it does consider its terms when evaluating what is reasonable and fair. The Court also highlights this portion of the Retainer Agreement because of Plaintiff's assertion that Diederich was attempting to take more than he was owed from the settlement proceeds. As the agreement states, Diederich was not limited to recovering only a third, as Plaintiff claims, if his hourly fee was greater than a third of the total recovery. See ECF No. 40 at ¶¶ 5–6.

purposes of the lien. Id. at 8–9. In addition, several of the entries in Diederich's time records are "block-billed," wherein multiple tasks are grouped into a single billing entry. See Hines v. City of Albany, 613 F. App'x 52, 55 (2d Cir. 2015). Billing records that include block-billing tend to "frustrate meaningful review of the reasonableness of the [attorney's] claimed hours," id., and courts have reduced the amount of attorney's fees in such cases, see, e.g., Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015). Therefore, considering the gaps and block-billing in Diederich's records, a reduction in the total billed amount (as of January 2020) is warranted.

Because the charging lien "attaches to the amount agreed upon in settlement," Diederich cannot collect more than the amount agreed to in the settlement between the parties.[6] Fischer-Hansen v. Brooklyn Heights. R. Co., 173 NY. 492, 502 (1903). The Court concludes that a charging lien in the amount of $15,000 is appropriate. This sum reasonably compensates Diederich for his time, reflects an appropriate reduction considering certain billing practices, and is consistent with Diederich's proposal. The Court recognizes that this amount exceeds 50 percent of Plaintiff's total recovery pursuant to the settlement agreement between the parties, but such an amount is warranted in light of all the circumstances, including the attempted fraud by Plaintiff. Because of the breakdown in communications between Diederich and Plaintiff, Defendant is authorized to remit the proportional payment to each recipient.

## CONCLUSION

For the foregoing reasons, Plaintiff's counsel's motion to fix and enforce a charging lien is GRANTED. The Clerk of Court is respectfully directed to enter judgment in the amount

---

[6] At the October 16, 2020 conference before the Court, the parties disclosed the amount Defendants were to pay Plaintiff as a part of the confidential settlement. Because the parties intend their settlement agreement to remain confidential, that amount is not disclosed here.

$15,000 in favor of Plaintiff's counsel, Michael David Diederich, Jr., and against Plaintiff Denise Hall. The Clerk of Court is also requested to DENY the motion at ECF No. 37. This case shall remain closed.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   March 16, 2021
         New York, New York